UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FREDDIE VALENTINE, | ) | NO. EDCV 04-01538-MAN |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint on December 27, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of an award of disability insurance benefits ("DIB") and supplemental security income ("SSI"). On January 25, 2005, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636c). The parties filed a Joint Stipulation on October 31, 2005, in which: Plaintiff seeks an order reversing the decision denying benefits and remanding the case for further proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his applications for DIB and SSI based on alleged disability on May 28, 1999. (Administrative Record ("A.R.") 93.) These applications were denied by an Administrative Law Judge ("ALJ") decision dated May 19, 2000. (A.R. 86-94.) Plaintiff apparently did not appeal this denial of benefits.

The action before this Court is based on DIB and SSI applications filed on July 25, 2002. (A.R. 142-45, 273.) These applications were denied by initial and reconsidered administrative determinations. (A.R. 107-10, 113-17.) Plaintiff then requested a hearing before an ALJ. (A.R. 118.)

There was an ALJ hearing on December 2, 2003, with testimony by Plaintiff, by a vocational expert ("VE"), and by Gloria Hall, a roommate of Plaintiff. (A.R. 25-50.) Plaintiff was not represented by counsel. (A.R. 29.) The ALJ issued a decision dated December 29, 2003, denying benefits. (A.R. 97-106.) Plaintiff requested review of the ALJ's decision. (A.R. 128.) By an order dated April 30, 2004, the Appeals Council vacated the December 2003 decision and remanded the matter for further administrative proceedings. (A.R. 130-33.)

Following remand, a hearing was conducted on August 17, 2004. Testimony was again given by Plaintiff, a VE and Gloria Hall. (A.R. 51-85.) The ALJ issued a decision dated September 17, 2004, again denying benefits to Plaintiff. (A.R. 12-24.) Plaintiff requested review of the ALJ's decision. (A.R. 7.) On October 29, 2004, the Appeals Council

1  denied the request for review.  (A.R. 4-6.)

2

3  **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

4

5  **A.  <u>Plaintiff's Medical Evidence</u>**

6

7       Due to a complete lack of mental health records, Plaintiff

8  underwent a consultative psychological examination, conducted by Dr.

9  Diane L. Cordrey, Licensed Clinical Psychologist, which was ordered by

10 the state agency in October 2002.  (A.R. 18, 107, 223-28.)  Dr. Cordrey

11 administered to Plaintiff the following examinations: a complete

12 psychological evaluation; the Wechsler Adult Intelligence Scale-3; and

13 the Wechsler Memory Scale-3.  (A.R. 223-28.)  Dr. Cordrey reported that

14 Plaintiff presented in a cooperative manner.  (A.R. 223, 225.)

15 Plaintiff reported that his chief complaints were:  difficulty reading

16 and writing; a hard time understanding; and chronic blisters on his feet

17 from a chemical that spilled on them when he was working for a farmer.

18 (A.R. 223.)  Plaintiff reported that he had never been psychiatrically

19 hospitalized nor had he sought outpatient mental health treatment.

20 (*Id.*)  Dr. Cordrey conducted a mental status examination, in which she

21 reviewed Plaintiff's:  general appearance; attitude; behavior;

22 attention; concentration; insight; judgment; fund of knowledge; speech;

23 and memory.  (A.R. 225-28.)  Upon completion of the examination and the

24 testing as referenced above, Dr. Cordrey opined that Plaintiff had

25 borderline intellectual functioning and mild memory impairment.  (A.R.

26 227-28.)  She further opined that Plaintiff did not evidence any

27 significant cognitive or emotional limitations regarding his ability to

28 function in work-related situations.  (*Id.*)  She concluded that

3

1  Plaintiff had adequate reasoning skills to avoid normal hazards, and he
2  could interact appropriately with others and relate to authority figures
3  as shown by his behavior with her.   (*Id.*)   Dr. Cordrey reported that,
4  during  the  evaluation,  Plaintiff  complied  with  one  and  two  step
5  instructions.   (*Id.*)

6

7       There are also treatment notes from the County of Riverside Mental
8  Health Department dated January 7, 2003, through February 4, 2003, most
9  of which the ALJ found to be "illegible."  (A.R. 19, 257-63.)   These
10 notes included a typed intake narrative, completed by David Baptist,
11 MSW,  intern.   (A.R. 263.)   Baptist  reported  that  Plaintiff  heard
12 "command type" voices and was generally depressed.  (*Id.*)  Plaintiff was
13 diagnosed with schizoaffective disorder.   (A.R. 262.)  Plaintiff was
14 prescribed Serzone, an anti-depressant medication, to take twice a day.
15 (A.R. 264.)   Plaintiff was seen three times for fifteen minutes to half
16 an hour after the intake on January 7, 2003.  (A.R. 19.)   There are no
17 more treatment notes from this facility after February 4, 2003.  (*Id.*)

18

19      There are medical documents from the Riverside County Department of
20 Public and Social Services dated January 7, 2003, through March 13,
21 2003.   (A.R. 267-69.)   These  documents  include  two  statements  of
22 disability  in  checklist  format  style:  (1)  signed  by  Dr. Petersen  on
23 January 27, 2003; and (2) signed by a physician with an illegible
24 signature on March 13, 2003.[1]  In the January 27 statement of disability,

25 _____

26      [1]    The January 27, 2003 statement of disability was rejected by
   the ALJ based on the disclaimer that "[Plaintiff] is unknown to this
27 M.D.."  (A.R. 20.)  The ALJ also rejected the March 13, 2004 statement
   of disability on two grounds: (1) "[t]here is no evidence that this
28 physician had any kind of consistent and continuing treatment with this

4

Dr. Petersen, indicated that Plaintiff: (1) has a psychological condition; (2) does not need constant supervision or care; (3) cannot work at all; and (4) is temporarily incapacitated until possibly March 15, 2003.  Dr. Petersen made the following disclaimer: "[the] patient is unknown to this M.D., seen once in clinic. [I] will provide this temporary authorization only until [the claimant] schedules follow up appointment, when his condition should be revealed." (A.R. 269.)  In the March 13 statement of disability, the doctor diagnosed Plaintiff with schizoaffective disorder and noted Plaintiff: (1) can do light part-time work; (2) does not need constant care or supervision; (3) is temporarily incapacitated for possibly six months; (4) is not permanently disabled; and (5) "has made progress on medications but still has symptoms of anxiety, paranoia [and] hallucinations." (A.R. 267.)

In support of Plaintiff's claimed impairments, Plaintiff, at the remand hearing, submitted three additional records from the Riverside County Department of Public and Social Services:  (1) a medication refill for Risperdal, an anti-psychotic medication, dated April 27, 2004; (2) a medication refill for Prozac, an anti-depressant medication, dated August 16, 2004; and (3) one page of notes from Dr. Petersen, which included another opinion of disability, dated June 7, 2004.[2] (A.R.

---

claimant or even conducted a mental status examination"; and (2) his conclusions are inconsistent with the rest of the objective medical file as well as the doctor's own statement that "[Plaintiff] has made progress on his medications." (*Id.*)

[2]    The ALJ rejected Dr. Petersen's June 7, 2004 statement of disability on two grounds: (1) Dr. Petersen had only personal knowledge of the claimant; and (2) Dr. Petersen questioned the credibility of Plaintiff's subjective complaints, and reported that he could have

53, 62, 270-272.)    In that statement of disability, Dr. Peterson diagnosed Plaintiff with "schizoaffective disorder and depression versus factitious disorder."    (A.R. 271.)    He further stated that "psychological testing indicates possible malingering versus exaggerated reporting due to low intelligence and dependency."[3] (*Id.*) Dr. Peterson also reported that Plaintiff: (1) needs constant care and supervision; (2) is probably permanently unable to work; and (3) is probably permanently disabled. (*Id.*)    Dr. Petersen added the following disclaimer: "not well known to this M.D.  History indicates chronic low function, whether due to primary psychotic process or social factors cannot be determined with certainty." (*Id.*)

There are also records from the state agency review physician, Dr. Robert B. Paxton, dated November 20, 2002, and February 21, 2003.  (A.R. 239, 253-56.)    Dr. Paxton, upon initial review and reconsideration, concluded that Plaintiff had "mild" memory impairment but no significant work limitations and agreed with the prior ALJ decision that Plaintiff had a non-severe mental impairment.  (*Id.*)

**B.  <u>The ALJ's Decision</u>**

In his September 17, 2004 written decision,[4] the ALJ found that

---

"factitious disorder."  (A.R. 20, 271.).

[3]    The psychological evaluation to which Dr. Petersen refers to in his report is not part of the record.

[4]    The ALJ expressly incorporated the earlier December 29, 2003 decision of the prior ALJ (A.R. 100-06) and supplemented it.  (A.R. 17.)

Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability on July 1, 2002. (A.R. 23.) The ALJ found that Plaintiff:  "is a 'younger individual'"; "has a 'marginal education'"; and "has no transferable skills . . . or transferability of skills is not an issue in this case." (A.R. 23-24.)  The ALJ also determined that Plaintiff's impairments of schizophrenic disorder and back pain are "severe" within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (A.R. 17-18, 23.)

The ALJ found that Plaintiff's subjective complaints of severe and disabling pain are "not totally credible." (A.R. 21, 23.)  The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform "a significant range of medium work."[5] (A.R. 18, 21-22, 24.) Using Medical Vocational Guidelines Rule 203.25 as a framework and relying upon the VE's testimony, the ALJ found that Plaintiff can perform a significant number of other jobs in the national economy, such as cleaner, hospital cleaner, and packer."[6] (A.R. 23-24.) Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id*.)

---

[5]    Medium work involves "lifting  no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" as well as "sedentary and light work."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[6]    *See* <u>Moore v. Apfel</u>, 216 F.3d 864, 870 (9th Cir. 2000)(discussing standards governing use of the grids and VE testimony: "When a claimant suffers from both exertional and nonexertional limitations, the grids are only a framework and a VE must be consulted.").

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y. of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* <u>Morgan v. Comm'r. of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Sec'y.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

///

///

8

**DISCUSSION**

Plaintiff alleges one issue:  Plaintiff contends that the ALJ failed to adequately develop the record regarding Plaintiff's mental impairments.[7]  (Joint Stipulation ("Joint Stip.") at 3.)

**A.**   **The ALJ Failed To Develop The Record Adequately And To Insure That Plaintiff's Interests Were Protected, Given That Plaintiff, Who Has A Severe Mental Impairment, Was Proceeding Without Counsel.**

In <u>Higbee v. Sullivan</u>, 975 F.2d 558 (9th Cir. 1992), the Ninth Circuit found that the duty to develop the record was not fulfilled in a case involving an unrepresented claimant who suffered from mental illness.  The Ninth Circuit explained:

> [W]here the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited. . . .  The duty to provide an adequate record is of extraordinary importance when a person once found eligible for S.S.I. benefits may be in danger of losing them because he is too ill to act in his own best interests.

---

[7]   Plaintiff does not contest the ALJ's findings regarding his physical impairments.  (Joint Stip. at 3.)

9

*Id.* at 561-62 (citations and quotations omitted).  *See also* <u>Tonapetyan</u> <u>v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)(the ALJ's duty to fully and fairly develop the record is heightened when the claimant is unrepresented and, particularly, when the claimant is mentally ill).  An ALJ may "discharge" his duty in various ways, such as: "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  *Id.* at 1150; *see* <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1999); *see also* <u>Smolen</u>, 80 F.3d at 1288.

Although Plaintiff did affirmatively state that he wanted to proceed without counsel, the colloquy between the ALJ and Plaintiff regarding Plaintiff's election to proceed does not confirm that, in doing so, Plaintiff knew and understood all of his rights:

> Q: Now, before we go any further, you understand that you have the right to an attorney at this hearing?
>
> A: Yes
>
> Q: Have you tried to – in the interim between the last hearing and this hearing, have you talked to any attorneys or other representatives?
>
> A: I did not deal with that because *I don't know how to explain myself to a lawyer* –
>
> . . . .
>
> Q: Mr. Valentine, do you feel that you're able to represent yourself today?
>
> A: As far as my knowledge, yeah.

10

1    Q: I'm sorry?

2    A: Yes, I could.

3    Q: You do feel that your are?

4    A: Yes, sir.

5    Q: Or do you feel the need -- a representative to help you

6    with the case?

7    A: I only can just speak of what I can and what I understand,

8    that's about it.

9    Q: All right.  Well, let me ask you just straight on.  Do you

10   want to proceed with the hearing today or do you want to

11   postpone it to try to have [an attorney] represent you?

12   A: *I guess I'll go on today.*

13

14   (A.R. 54-56; emphasis added.)

15

16       Moreover, because Plaintiff was not only proceeding without legal

17   counsel, but also suffers from a "severe" mental illness (A.R. 17, 23),

18   the ALJ had a heightened duty to protect him, and, therefore, insure

19   that additional pertinent medical evidence regarding his psychiatric

20   history was procured.  Tonapetyan, 242 F.3d at 1150.  The record

21   suggests that there could be additional and pertinent medical evidence

22   regarding Plaintiff's psychiatric history, which was not reviewed by the

23   ALJ.[8]  The record also indicates that the ALJ based his decision on scant

24   _____

25       [8]   Plaintiff informed the ALJ at the remand hearing that he had
     just seen Dr. Peterson, that he was taking both anti-psychotic and anti-
26   depressant medications, and that "the treatment facility had made
     adjustments."  (A.R. 62, 76.)  Plaintiff also submitted records at the
27   remand hearing: a prescription for Risperdal, an anti-psychotic
     medication; a prescription for Prozac, an anti-depressant medication;
28   and one page of mental health notes from Dr. Petersen, indicating that

                                     11

medical evidence, as he expressly stated that "the truth is there are almost no medical treatment records of any kind." (A.R. 21.) Accordingly, the ALJ's duty to develop the record was triggered. Tonapetyan, 242 F.3d at 1150 ("ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry'"; quoting Smolen, 80 F.3d at 1288).

Plaintiff contends (Joint Stip. at 5) that, although the ALJ made some effort to develop the record by ordering the consultative psychological examination administered on October 21, 2002 (A.R. 223), that examination predated the onset of schizophrenia from which Plaintiff subsequently suffered.[9] During his consultative examination, Plaintiff did not describe any auditory hallucinations, and schizophrenia was not at all discussed. (A.R. 223-28.) Therefore, as Plaintiff contends, and this Court agrees, "that report does not answer the critical question of whether Plaintiff is disabled as a result of his schizophrenia." (Joint Stip. at 5.)

Although, as Plaintiff concedes, the ALJ further attempted to develop the record by requesting Plaintiff's treatment records from the County of Riverside Mental Health Department on February 21, 2003, this request produced only few treatment records, because Plaintiff had only

_____

Plaintiff had undergone psychological testing. (A.R. 53, 62-63.)

[9] Although the record indicates that Plaintiff alleged disability on July 1, 2001, due to discomfort in his back and legs, *hearing voices* and stress, Plaintiff did not begin mental health treatment until January 7, 2003. (A.R. 254.)

12

began receiving treatment for his schizophrenia one month earlier on January 7, 2003. (A.R. 257, 266.) Moreover, all of the handwritten notes from this treatment center were ignored by the ALJ, because he found them to be "illegible." (A.R. 19.) Only the typed intake completed by Baptist was considered by the ALJ, which indicated that Plaintiff: (1) had schizoaffective disorder and was depressed; (2) was hearing "command type" voice; and (3) was prescribed, Serzone, an anti-depressant medication.

Furthermore, the ALJ failed to fulfil his duty "to scrupulously and conscientiously probe into, inquire of, and explore for **all** the relevant facts" by not procuring additional pertinent records from the County of Riverside Social Services Department. Higbee, 975 F.2d at 561 (emphasis added). By the time of the remand hearing on August 17, 2004, approximately 20 months had passed since Plaintiff began receiving mental health treatment on January 7, 2003. (A.R. 254.) However, the ALJ made no attempt to fully and fairly develop the record with regard to Plaintiff's treatment records for his mental impairments after February 21, 2003, despite clear evidence that additional pertinent records existed at the Riverside County Department of Social Services.[10] (A.R. 52, 62-63, 255.) The ALJ's failure to procure these records is particularly glaring in view of the ALJ's heightened obligation to protect Plaintiff, given the circumstances. Higbee, 975 F.2d at 561-62.

---

[10]   Plaintiff, at the remand hearing, indicated to the ALJ that he had been receiving from the Riverside Social Services Department continuous treatment for schizophrenia and depression during the course of the eighteen month lapse between February 21, 2003, and the remand hearing on August 17, 2004. (A.R. 53, 62-63 -- Plaintiff submitted three records from the County of Riverside Social Services Department at the remand hearing.)

As Plaintiff contends, "the ALJ should have done more than merely force Plaintiff, an unrepresented mentally incapacitated individual, to procure records on his own." (Joint Stip. at 6.)

The ALJ could have continued the hearing or kept the record open after the hearing to obtain the necessary supplementation of the record. Tonapetyan, 242 F.3d at 1150. *See also* Smolen, 80 F.3d at 1288.  The ALJ could have procured another consultative examination to assess the severity of Plaintiff's schizophrenia.  20 C.F.R. §§ 41.917 and 416.919(a).  The ALJ could have adduced testimony from a medical advisor.  20 C.F.R. § 416.929(b).  The ALJ's failure to take any of the above measures in order to fully and fairly develop the record, constitutes reversible error.

Moreover, the ALJ erred in ignoring competent evidence in the record regarding Plaintiff's mental health treatment.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).  The ALJ erroneously ignored in the handwritten treatment notes from the County of Riverside Mental Health Department dated January 7, 2003, through February 2, 2003, simply concluding that they were "illegible." (A.R. 19.)  Upon scrupulous review of the record, many of the handwritten notes are, in fact, legible and reveal significant information regarding Plaintiff's diagnosis and prognosis, such as:  Plaintiff's global assessment of functioning ("GAF") score of 35,  which is indicative of major

impairment;[11] and the treatment facility's election to treat Plaintiff's schizophrenia because of the "risk of decompensation" and "possible hospitalization."[12]   (A.R. 20, 262, 266, 268).

Furthermore, the ALJ mischaracterized the record regarding Dr. Petersen's mental health notes that indicated Plaintiff's diagnosis of and prognosis of Plaintiff's schizophrenia in order to justify his conclusion of "not disabled."  The ALJ rejected Dr. Peterson's mental health notes, finding:   (1) Dr. Petersen's conclusions were not consistent with the objective medical findings in the record; (2) Dr. Petersen indicated that he did not know Plaintiff well; and (3) Dr. Petersen questioned the credibility of Plaintiff, noting that Plaintiff evidenced "possible malingering versus exaggerated reporting due to low intelligence and dependency."  However, what the ALJ left out of his opinion was Dr. Petersen's statement that this report was based on "psychological testing," which is not part of the record due to the ALJ's failure to procure the results of such testing.  Even more significant is the ALJ's omission of Dr. Petersen's indication that Plaintiff's credibility determination was subject to further medical

---

[11]     A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS TEXT REVISION, 34 (4th ed. 2000)("DSM-IV-TR"); *See also* Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001)(GAF rating of 50 or below indicates the presence of serious symptoms among which may include the inability to work.)

[12]     Although this was not raised as an issue by Plaintiff, this Court finds that the ALJ erred in ignoring competent evidence in the record.   Upon remand, the ALJ shall revisit this information and consider it in his decision.  *See* Gallant, 753 F.2d at 1456.

1  evaluation and that Plaintiff, nonetheless, needs "constant care" or

2  "supervision" and "history indicates it is unlikely that [Plaintiff]

3  will be able to work."  (A.R. 53, 62-63, 271.)

4

5      Consequently, the ALJ improperly rejected the testimony of Gloria

6  Hall in his finding that she is "biased", and her opinion is

7  "[un]professional" and "[in]consistent with the objective medical

8  evidence."  (A.R. 21.)   The ALJ erred in discrediting significant

9  testimony by Ms. Hall, which evidenced the hindrance of Plaintiff's

10  symptoms on Plaintiff's ability to work, because the ALJ failed to

11  consider existing medical evidence that may be **consistent** with her

12  testimony but was either improperly ignored or improperly rejected by

13  the ALJ.[13]

14

15      Accordingly, the ALJ's failure to fully and fairly develop the

16  record constitutes reversible error.

17

18  **B.   Remand Is Required.**

19

20      For the foregoing reasons, this Court concludes that remand is

21  appropriate so that the defects in the record may be corrected.

22  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).   In

23  particular, the ALJ shall develop the record by seeking a medical

24

25      [13]   The ALJ indicated in his opinion that: "I have read and
   considered the daily activities questionnaire completed by the
26  claimant's friend and roommate, Gloria Hall.  I find it is consistent
   with her testimony but neither her testimony or the questionnaire are
27  consistent with the objective medical evidence.  Ms. Hall is not a
   health care professional and her opinions are biased.  I do not give
28  them significant probative value."  (A.R. 21.)

16

opinion from an examining or consultative physician -- based on *all* the relevant evidence -- regarding Plaintiff's mental limitations. *See*, *e.g.*, 20 C.F.R. §§ 404.1517, 404.1545(a), 404.1512(b)(6) (ALJ may rely upon medical consultants and medical experts based on their review of the evidence in determining whether a claimant is disabled); *see also* 20 C.F.R. § 404.1519(a)(b) (listing situations requiring a consultative examination, such as a conflict, inconsistency ambiguity, or insufficiently in the evidence).  After further developing the record, the ALJ should reconsider Dr. Petersen's June 7, 2004 assessment and set forth specific and legitimate reasons, supported by substantial evidence in the record, for rejecting any limitations found by Dr. Petersen that the ALJ deems it appropriate to reject.  *See* Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)(when a treating or examining source opinion is contradicted, the ALJ may reject if for specific and legitimate reasons that are based on substantial evidence in the record); *see also* Tonapetyan, 242 F.3d at 1148-49).  Furthermore, the ALJ should reconsider the testimony of Plaintiff's roommate, Gloria Hall, and set forth legitimate reasons, supported by evidence in the record, for rejecting those portions, if any, of her testimony that the ALJ deems appropriate to reject.  *See* Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(the Commissioner must take into account lay testimony as to a claimant's symptoms unless she expressly determines to disregard such testimony, in which case "[s]he must give reasons that are germane to each witness"(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)); *see also* Smolen, 80 F.3d at 1288 (the ALJ may not disregard the testimony of lay witnesses without some articulated legitimate justification.).

1                                  **CONCLUSION**

2

3       Accordingly, for the reasons stated above, the denial of benefits

4  is REVERSED, and this case is REMANDED for further proceedings

5  consistent with this Memorandum Opinion and Order.   Judgment shall be

6  entered reversing the decision of the Commissioner, and remanding the

7  matter for further administrative action consistent with this Memorandum

8  Opinion and Order.

9

10      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

11  copies of this Memorandum Opinion and Order and the Judgment on counsel

12  for Plaintiff and for Defendant.

13

14      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

15

16  DATED:  August 18 2006

17                                   _____
                                              /s/
18                                     MARGARET A. NAGLE
                                   UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

                                        18